
RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 3/26/08
         6a

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

| | |
|---|---|
| ARLENE HEBERT | CIVIL ACTION NO. 00-2381 |
| VERSUS | JUDGE HAIK |
| UNUM LIFE INSURANCE COMPANY AMERICA | MAGISTRATE JUDGE HILL |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REASONS FOR JUDGMENT

On October 23, 2000, Arlene Hebert filed a Petition for Damages, Penalties, Attorneys' Fees and all sums due under a long term disability policy issued by Unum Life Insurance Company of America (hereinafter "UNUM").

**A.   Facts**

This is a suit to recover disability benefits under a group long term disability policy issued to Plaintiff's employer, Franciscan Missionaries of Our Lady Health Systems (Our Lady of Lourdes Regional Medical Center), as part of an Employee Welfare Benefit Plan governed by ERISA. Plaintiff first filed a claim for disability benefits on November 11, 1999, alleging that she was disabled as of September 6, 1999, as a result of "fatigue, resulting from sleep deprivation and muscle and joint pain."

UNUM denied the claim, and after Plaintiff exhausted her administrative remedies, Plaintiff filed the captioned lawsuit on October 23, 2000. Among other motions, UNUM filed a Motion for Summary Judgment or, in the Alternative, Motion in Limine to Limit the Evidence to

the Administrative Record as it Existed Prior to Suit Being Filed. UNUM's motion was denied.

On October 1, 2001, with consent of counsel, this Court ordered that this matter be dismissed, without prejudice, and that the case be remanded to the Plan Administrator for consideration of additional evidence submitted to UNUM after suit was filed. After UNUM's appellate review on remand, UNUM advised Plaintiff on March 1, 2002 that the decision to deny benefits had been appropriate. In the letter sent to Plaintiff, UNUM noted that while the Plaintiff may have had physical and psychological complaints, several of the diagnoses being utilized by Plaintiff's treating physicians were unsubstantiated by the medical records and testing provided to UNUM.

Meanwhile, on February 28, 2002, awaiting notice from UNUM pertaining to the review, Plaintiff filed a motion to reinstate and to amend the Complaint, to name as defendants the physicians that had reviewed Plaintiff's claim. On April 25, 2002, the Court reopened the case.

Motions were filed by UNUM seeking dismissal of the individual defendants, as well as oppositions and reply memoranda. On September 25, 2003, the Court granted UNUM's motions to dismiss the individual defendants.

On May 12, 2004, the parties filed a Joint Motion to Submit the Matter for Final Disposition on Cross-Motions for Summary Judgment. The Court granted this Motion, ordering that said motions be filed on or before June 21, 2004. Plaintiff alleges that Defendant is liable for damages, penalties, attorneys' fees and all sums due under a long term disability policy issued by UNUM.

**B.     Plaintiff's Contentions**

Plaintiff submitted a claim to UNUM for disability benefits based on her diagnosis of

fibromyalgia and chronic fatigue syndrome. UNUM denied this claim on February 11, 2000. (Exhibit "A"). Plaintiff contends that this denial was based on evaluations of medical information sent by Plaintiff to UNUM. These evaluations were performed by Robert MacBride, M.D. and Steven Feagin, UNUM in-house physicians. Plaintiff contends that the reading of their reports, along with their employment with UNUM, shows the bias of these two physicians.

Plaintiff asks the Court to note the designation of Plaintiff's "self-reported claim" by Drs. MacBride and Feagin in their reports. (Exhibit "C"). Plaintiff contends that this designation was made as a result of the doctors disregarding her treating physician's statement provided to UNUM. Plaintiff's treating physician, Dr. Salvato, states in his report that Plaintiff's "answers are based on my patient's self-report, as well as my clinical experience in treating this disease." (Exhibit "D").

On March 14, 2000, Plaintiff filed an appeal to her denial. Plaintiff alleges that Dr. Salvato forwarded correspondence to UNUM on March 16, 2000 indicating that Plaintiff "has undergone extensive testing of her cognitive functioning with a Q-EEG (brain mapping)..." In that same letter, Dr. Salvato stated, "The results are currently pending at this time." On April 10, 2000, Dr. Salvato forwarded correspondence to UNUM's Quality Review in an effort to explain Plaintiff's disability and to advise that "we are waiting for a brain mapping test that will be interpreted by Dr. Myra Preston." Plaintiff contends that without the above mentioned brain mapping results, UNUM again denied the disability claim of Plaintiff on May 12, 2000. (Exhibit "E").

On October 1, 2001, all parties agreed that the then pending litigation would be dismissed without prejudice and Plaintiff would submit additional medical and vocational data. Plaintiff

3

contends that, per the Court's order, counsel for Plaintiff forwarded medical records of nine physicians and a vocational rehabilitation report from Glenn Hebert. (Exhibit "K"). Plaintiff also contends that her social security file was forwarded and contained the reports from two independent physicians who evaluated her at the Social Security Administrations' request. Plaintiff's social security application was granted as the ALJ deemed her to be totally and permanently disabled. Plaintiff alleges that neither Mr. Hebert's report nor the independent medical examination reports (done at the behest of the Social Security Administration) are contained in the proposed record forwarded to undersigned by counsel for defense on May 11, 2004.

Plaintiff contends that every evaluation prior to the original denial concentrated solely on the "controversial" diagnosis of chronic fatigue. Plaintiff alleges that the vague references to Plaintiff's long standing battle with fibromyalgia and colitis indicate a disregard by UNUM for her condition. Plaintiff contends that the only reference to being a potential disabling condition was that there was no evidence of increased problems or symptoms of fibromyalgia. Plaintiff alleges that this seemed to be the party line of the neuropsychologists, Dr. Milton Jay and Dr. Lani Graham, both UMUM employee's. Plaintiff argues that these physicians disregarded her fibromyalgia and colitis symptoms, despite the records submitted on appeal, and that the records contained other physicians' notes of continually increasing difficulties Plaintiff was having maintaining her employment and regarding her efforts to take less and less stressful and strenuous jobs in order to keep working.

Plaintiff also noted that, as early as October 24, 1994, Dr. Steven Abshire was treating her for fibromyalgia and inflammatory bowel disease and was concerned about her health such that

4

he was to "probably recommend a leave of absence if her symptoms continued." (Exhibit "F"). Also, as early as November 16, 1994, Dr. Abshire recommended that she "take a medical leave of absence for a three month period of time." (Exhibit "F"). Plaintiff contends that she was released to return to work on March 15, 1995, but with Dr. Abshire's recommendation that she "try to find a job that is fairly defined that would not be a high stressed situation, as [he] didn't think that she would do well with this." (Exhibit "F"). Plaintiff alleges that Dr. Abshire then recommended that Plaintiff should consider "trying to find a work environment that is a little bit less stressful." Plaintiff contends that, despite assertions by Defendant that colitis and fibromyalgia did not contribute to her disability, Plaintiff refers the Court to a note by Dr. Abshire dated August 25, 1999. (Exhibit "F"). In this note, Dr. Abshire recommended that Plaintiff continue treatment with Dr. Malin who was treating her for inflammatory arthritis associated with her colitis and that she "consider some time of temporary disability owing to her problem." (Exhibit "F").

Plaintiff alleges that objective evidence found on pages 443, 449 and 451 of the proposed record was disregarded by the Defendants. These pages note abnormal "oxidative stressed-panel" results on October 4, 1999, November 10, 1999, and December 21, 1999. Additionally, Pages 609 through 632 and 434 through 454 reveal that Plaintiff's laboratory results showed some abnormalities. Further, Plaintiff contends that Dr. Myra Preston performed a Quantitative Electroencephalogram and that she tested positive for all variables to be classified as a CFIDS patient. (Exhibit "H").

Additionally, Plaintiff notes that Mr. Glenn Hebert found that Plaintiff was unable to work in any capacity in his vocational rehabilitation report. Plaintiff alleges that this was based

5

not only on a chronic fatigue diagnosis, but also on a diagnosis of Fibromyalgia and all of her other medical problems.

Plaintiff alleges that UNUM had their employee, Dr. Lani Graham, evaluate the medical records and that Dr. Graham makes no mention of Mr. Hebert's report, but chooses to concentrate on whether Plaintiff's depression is mild or moderate and/or the diagnosis of Chronic Fatigue Symptom. Plaintiff contends that Dr. Graham further declared that no diagnosis of Fibromyalgia had ever been made. Plaintiff argues that this is contrary to the medical records in this case, most notably those of Dr. Abshire. Plaintiff alleges that the physicians who work for UNUM are trained in the same manner as Dr. Graham and also mistakenly qualify Plaintiff's problems as "self-reported."

Finally, Plaintiff contends that, unlike the dissenting employees of UNUM, Plaintiff's treating physicians appropriately considered her overall medical condition when declaring that she was unable to work. Plaintiff alleges that Mr. Glenn Hebert is the only person who evaluated this claim who has any expertise in vocational rehabilitation and that UNUM never considered any part of Mr. Hebert's report, as it was not included as part of the record of this case.

## C.  Defendant's Contentions

Defendant contends that the question before the Court is not whether it agrees with UNUM's decision, but whether the administrative record contains some concrete evidence to support its decision to deny benefits, even if the Court finds that there is also evidence to the contrary. Defendant alleges that UNUM conducted an extensive appellate review of the medical data in the administrative record, which is outlined below.

Defendant notes that UNUM's in-house physician, Dr. Graham, disagreed with and

6

discredited Dr. Salvato. Dr. Graham pointed out that the basis for the Fibromyalgia diagnosis from 1994 or 1995 was not in the claim file. (CL 324). Dr. Graham acknowledged that Fibromyalgia could cause many of the Plaintiff's reported symptoms, but according to the records the purported diagnosis dated back to 1994 when Plaintiff was working full time. (CL 324). Yet, the medical data was void of any significant change in Plaintiff's condition to explain why she stopped working or why she did not follow Dr. Malin's (the treating physician prior to Dr. Salvato) recommendation of "daily exercise" as part of her therapy. (CL 324). Instead, Defendant contends that Plaintiff abandoned Dr. Malin's care and left her home state of Louisiana to travel to Texas to be examined by Dr. Salvato. Dr. Salvato prescribed two hours of rest for every one hour of activity, which was a direct contradiction to Dr. Malin's recommendation of daily exercise. (CL 324).

Defendant alleges that the "brain mapping" conducted by Dr. Preston, another treating physician, was completed in March 2000, and it, therefore, cannot be considered applicable to the date of disability in September 1999. (CL 325). More importantly, Defendant contends that "no accepted medical research...supports brain mapping as a method of diagnosing chronic fatigue syndrome." (CL 325). Also, Defendant alleges that Dr. Preston failed to provide any restrictions or limitations relative to his examination and the "brain mapping" results. (CL 325). Defendant contends that Dr. Graham presented a plethora of reasons to doubt Dr. Salavato's credibility. (CL 326).

Defendant further argues that another UNUM in-house physician, Dr. Neuren, a neurologist, reviewed the claim file and specifically addressed the use of "brain mapping" to diagnose chronic fatigue syndrome. (CL 320). First, Dr. Neuren noted that brain mapping is an

7

extremely unreliable tool and is of extremely limited utility in clinical application. (CL 320). Second, "EEG brain mapping and other advanced QEFG techniques should be used only by physicians [that are] highly skilled in clinical EEG, and only as an adjunct to and in conjunction with traditional EEG interpretation." (CL 320). Defendant contends that since Ms. Preston holds a Ph.D., she was not a qualified physician to conduct the brain mapping technique. Furthermore, Ms. Preston failed to perform a traditional EEG, which is a necessary element to "brain mapping." (CL 320). Dr. Neuron concluded that the "attempt to diagnose or even confirm a diagnoses of chronic fatigue syndrome or fibromyalgia can only be considered junk medicine." (CL 320).

A third UNUM in-house physician, Dr. Jay, a neuropsychologist, also reviewed Plaintiff's claim file. (CL 308-319). Dr. Jay specifically addressed the neuropsychological evaluation report and data from November 16, 2000 submitted by treating physician, Dr. Pollock, another neuropsychologist. (CL 308). Dr. Jay provided a detailed report. Dr. Jay noted flaws and contradictions in Dr. Pollock's medical data and reports.

First, Dr. Jay addressed the notations of depression in the Plaintiff's records, and while the physicians' records were voluminous in this case, Dr. Jay saw insufficient data regarding depression to evaluate adequately the nature and severity of a possible depression problem. (CL 308). No psychiatric evaluation and no apparent psychotherapy by a mental health specialist were present in the records. (CL 308). Consequently, the standard and expected treatment for significant depression, in the form of psychotherapy and antidepressant medication, was not clearly evident. (CL 308).

Dr. Jay concluded that Dr. Pollock's characterization of the apparent depressive disorder

could not confidently be made as a "Major Depressive Disorder." (CL 310). "The symptoms and signs that commonly separate Major Depressive Disorder from other types of depression could not clearly be assigned in this case." (CL 310). Thus, Dr. Jay saw a reasonable basis of support for some type of depressive disorder of apparently mile to moderate severity, although the specific support for "Major Depressive Disorder" could not be reliably confirmed. (CL 310).

Second, Dr. Jay reported that the test results pertaining to memory loss were not indicative of "clear signs of true primary memory loss." (CL 316). Also, Dr. Jay "did not regard the memory findings as consistent with primary memory disorder due to the neurological dysfunction." (CL 316). In fact, Dr. Jay stated that he "certainly did not think that brain disorder needed to be invoked in this case, nor did [he] see the overall neuropsychological findings as providing adequate substantiation of a neurological etiology." (CL 317).

Third, Dr. Jay discredited Dr. Pollock's diagnosis of "organic brain syndrome." (CL 310). In Dr. Jay's opinion, "signs of minor difficulties in speed and attention might easily be due to depressive symptoms, tiredness, distress, medication effects, or multiple other etiologies of a non-neurological source." (CL 317). Furthermore, by no means did Dr. Jay "view the neuropsychological findings as adequate and convincing support for 'organic brain syndrome.'" (CL 317).

Defendant contends that, given the concrete evidence in the administrative record and the extensive medical reviews conducted by UNUM, the determination that Plaintiff could perform the duties of her regular occupation was correct. Defendant further contends that it was entirely reasonable for UNUM to reject the conclusory statements of the treating physicians that were not supported by their own records and which did not relate back to Plaintiff's date of disability.

9

## ANALYSIS

Pursuant to *Federal Rules of Civil Procedure 56*, A Motion for Summary Judgment should be granted if the pleadings and affidavits "show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The non-moving party must do more than show there is doubt as to the facts by coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The scope of this Court's review in assessing UNUM's factual determination to terminate benefits is limited to a review of the administrative record. *Vega v. Nat'l Life Ins. Services, Inc.*, 188 F. 3d 287, 300 (5th Cir. 1999).

An administrator's denial of benefits under an ERISA plan is "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). It is undisputed that the policy at issue vests UNUM with discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of its policy in making benefit determinations. (CL 047).

A determination that a participant is not "totally disabled" under a long term disability policy is a factual determination subject to review by a District Court under an abuse of discretion standard. *Sweatman v. Commercial Union Ins. Co.*, 39 F. 3d 594, 599 (5th Cir. 1994). When applying the abuse of discretion standard to an administrator's factual determinations, the Court analyzes whether the administrator acted arbitrarily or capriciously. *Salley v. E.I. DuPond De Nemours*, 966 F. 2d 1011, 1014 (5th Cir. 1992). A decision is arbitrary when made "without a

rational connection between the known facts and the decision or between the facts and the evidence." <u>Lain v. Unum Life Ins. Co.</u>, 279 F. 3d 337, 342 (5th Cir. 2002).

A plan administrator's decision will be affirmed if it is supported by "substantial evidence." <u>Meditrust Fin., Servs. Corp. v. Sterling Chems., Inc.</u>, 168 F. 3d 211, 215 (5th Cir. 1999). "'Substantial evidence' is more than a mere scintilla...it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Girling Health Care, Inc. v. Shalala</u>, 85 F. 3d 211, 215 (5th Cir. 1996). A court may not substitute its judgment for that of the plan administrator. <u>Marziale v. Hartford Life and Accident Ins. Co.</u>, 2002 WL 1359639 (E.D. La. 2002).

In the instant matter this court is not asked whether it agrees with UNUM's decision but whether the administrative record contains some concrete evidence to support its decision. The record shows that UNUM's decision to deny benefits is indeed supported by the detailed reports of its multiple in-house doctors. UNUM supplied three doctors to review Plaintiff's claim and each doctor evaluated the claim and created an independent analysis within their respective field of expertise. UNUM's doctors addressed the opinions of Plaintiff's treating physicians and concluded that Plaintiff could perform the duties of her regular occupation. The fact that UNUM's in house physicians disagreed with Plaintiff's treating physicians does not indicate that UNUM abused its discretion.

As noted above, UNUM's decision will be affirmed if it is supported by substantial evidence. The reports by UNUM's in-house physician provide substantial evidence to support a denial of Plaintiff's claim. For example, UNUM's Dr. Graham suggests that Plaintiff's symptoms do not equate to a diagnosis of fibromyalgia. Dr. Graham points out that the basis for

the fibromyalgia diagnosis from 1994 or 1995 was not in the claim file. Dr. Graham acknowledged that fibromyalgia could cause many of the Plaintiff's reported symptoms, but according to the records the purported diagnosis dated back to 1994 when plaintiff was working full time.

Another UNUM in-house physician, Dr. Neuren, a neurologist, reviewed the claim file and specifically the use of "brain mapping" to diagnose chronic fatigue syndrome. Dr. Neuren notes that brain mapping and other advanced QEEG techniques should be used only by physicians that are highly skilled in clinical EEG. Dr. Neuron points out that Hebert's test was conducted by Ms. Preston, a Ph.D., and was therefore not a qualified physician to conduct the brain mapping technique. Furthermore, she failed to perform a traditional EEG, which is a necessary element to brain mapping. Therefore, Dr. Neuron concluded that this attempt to diagnose chronic fatigue syndrome or fibromyalgia was not properly executed and thus not credible.

A third UNUM in-house physician, Dr. Jay, a neuropsychologist, also reviewed Hebert's claim file. Dr. Jay specifically addressed the neuropsychological evaluation report and data submitted by treating physician, Dr. Pollock, another neuropsychologist. First Dr. Jay notes that there was insufficient data in Dr. Pollock's reports regarding depression to adequately evaluate the nature and severity of a possible depression problem. No psychiatric evaluation and no apparent psychotherapy by a mental health specialist were present in the records. Therefore, Dr. Jay concluded that Dr. Pollock's characterization of the apparent depressive disorder could not confidently be made as a "Major Depressive Disorder."

Based on UNUM's in-house physicians' reports, it is clear that UNUM' decision was

12

supported by "substantial evidence." Because of the "substantial evidence," it was not an abuse of discretion when UNUM denied Plaintiff disability benefits. As mentioned above, an abuse of discretion occurs only when the record contains no basis upon which the decision maker rationally could have made its decision or if the action is arbitrary, fanciful, or clearly unreasonable. *Data Scope Corp. v. SMEC, Inc.*, 879 F. 2d 820, 828 (5th Cir. 1989), cert. Den., 110 S. Ct. 729 (1990).

The fact that UNUM's in-house physicians disagreed with Plaintiff's treating physicians is not indicative of an abuse of discretion. After all, ERISA does not mandate that plan administrators must accord special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (U.S. 2003). Furthermore, several of the diagnoses being utilized by Plaintiff's treating physicians were unsubstantiated by the medical records and testing provided to UNUM. Since the administrative record did not contain concrete evidence to support Plaintiff's treating physicians' diagnoses, UNUM's denial of benefits was not an abuse of discretion.

Upon review of the administrative record this court does not find sufficient evidence to support a contention that UNUM abused its discretion or acted arbitrarily or capriciously in its factual determination to deny long term disability benefits to Arlene Hebert. Contrarily, the administrative record shows UNUM extensively reviewed Hebert's claim and supported its findings with detailed medical analysis.

Therefore, this Court denies Plaintiff's claim for Damages, Penalties, Attorneys' Fees and all sums due under the long term disability policy issued by UNUM.

## CONCLUSION

For the reasons set forth above, it is hereby Ordered, Adjudged and Decreed that there be judgment in favor of Unum Life Insurance Company of America and against Plaintiff, Arlene Hebert.

THUS DONE AND SIGNED on this the 26th day of March, 2008.

UNITED STATES DISTRICT COURT JUDGE